Good morning, Your Honors. Peter Goldschneider for the appellant. I'd like to reserve two minutes for rebuttal, please. I'd like to reiterate, if I could, the factual basis for the appellant's claim that actual misconduct by the jury was committed rather than it simply being an allegation of misconduct, which appears to be the way the error was defined previously. I think it's important to make that distinction, because if, in fact, it was misconduct, there is a presumption of prejudice that was never rebutted, and or a need for more serious investigation of the outcome of that misconduct than was conducted in this case. So I think we have an unusual situation in that the misconduct of the one juror, Stewart, is rather undisputed. I don't know if I need to discuss that to express my opinion. Well, that's true. And that's where it becomes a question of whether or not the record reveals further misconduct that was not remedied by the excuse of the jury or the need for an investigation to determine whether or not such misconduct was committed. This may be important, so at some point I hope you will answer this, maybe now or some point in the discussion. Did the defense lawyer request a hearing or a point of the jury? You say in your brief that there is. I just want to make sure that you tell us where it is and what it is. You said you want me to just do it this minute, but in your discussion of the case, I hope you won't address this. Okay. After Stewart was brought in, and I won't delineate the misconduct that he committed. It's rather obvious. It's almost a litany. I think you can count on the fact that we've had the briefs and are familiar with the facts. Now, in addition to the misconduct that Stewart was alleged to have committed, he also was reported by this couple, which, by the way, was not anonymous, easily identifiable, had a tape recording of their conversation, their phone number, and the defense counsel represented they could be produced in court. That's another shibboleth of the previous descriptions of this case. After that was presented to the court, the court was also informed that Mr. Stewart had indicated that the other jurors know the defendant's guilty, too. So we have this, once again, this myth that somehow there's no evidence before the court that Stewart had talked to the other jurors. Well, if someone says that he's guilty and all the other jurors know it, too, that certainly raises a strong inference that there was a discussion between Stewart and the other jurors, or that Stewart heard from the other jurors their opinions that the defendant was guilty. So that's the status of the case before the court, before it calls Mr. Stewart in. Now, instead of holding a hearing with the parties present, the court holds an in-camera hearing with no one present, unrecorded, and with none of the parties present, even the prosecutor was not present. Well, this wasn't a hearing, was it? Well, it was an off-the-record discussion with Stewart, and based on the other jurors. Basically telling him you're off the jury. Right. But there was more than that, Your Honor. We don't know precisely, but this is a... No. Of course we don't know what was actually said. But my understanding, and you can correct me if I'm wrong on this, is that what they said is, okay, we all agree we get rid of Stewart, and... I'm not sure that was decided until Stewart was brought in. The court, presumably, asked Mr. Stewart of these allegations, and only upon hearing his response did he excuse him. Well, go ahead and tell me. I had thought that before Stewart was brought in, after allegations were heard, that everybody said, let's get rid of Stewart, and then the judge said, you know, how are we going to do it without endangering the couple, you know, the people who... And the judge said, you know, I'll talk to him, I'll tell him he's off the jury. I thought that was the sequence, and the purpose of the in-camera discussion was to sort of ease Stewart out of the case without giving away anything about the people who had told on him. I would imagine, Your Honor, again, we're speculating here without the court having held a reported hearing, but defense counsel stated from the beginning that he was requesting that the court find out if Stewart had spoke to the other jurors. This is what was reported. Where is that? That's on page 4 of the supplemental record that the State of California was able to provide. At that point, the... Okay. I've got a big one and a little one, and so you're looking at the little one. And this is page 4. Go ahead. My page... We're on page 4. Give me a line number. Starting about on page 3, the defense counsel requested, get rid of Mr. Stewart... And line number. Line 28, page 4, line 2. Okay. Get rid of Stewart... This is Mr. Cain talking. Right. That's the defense attorney. Okay. Find out if he had said anything or talked to them. So defense counsel clearly requested that the court determine the extent of the communications of any between her that was because he had heard from the anonymous... This is it, though, right? This is his request for hearing. If there is one, this is it. That's really what he said, and the court did not seem to express an interest in doing that. It's not a motion. There's no follow-up, by the way, before we go ahead and... I guess they had to bring up an alternate. So before we go through that process, there's no statement... By the way, Your Honor, we need to poll the other jurors to make sure that they are not tainted. There's nothing like that. There's nothing beyond the fact that he asked the court to inquire what, if anything, the other jurors have been told, and I suppose the defense counsel could have been more vigorous in pursuing the motion, but the trial court here had its own... Let me just ask you one more question about this. This thing that we are looking at, the excerpt that you are relying on here, at what point in time in the sequence of events does this happen? Well, it happens when it's brought to the court's attention that this couple called, left the phone number. There's a taper... Remember, there's some other things here that you need to remember also in the context of your question, Judge Kuczynski. First of all, the defense counsel also offered the court to listen to the tape recording of the couple who had first-hand knowledge of Stewart's statement. The court had no interest in listening to that tape. It's on page 5 of the same document. The court wasn't interested in that. The court also expressed its impatience with the cost of this trial. Repeatedly said, what are we going to do? We have another trial, and was concerned in a small county with the fact that this now was the second trial, the first had been reversed, and you know the history of the case in terms of the previous jury misconduct and the other issues involving the case. So this was a court that had a very strong view of how it was going to conduct the investigation. I would deny, and I try cases more than I handle matters on appeal, I would have been more insistent to hold a hearing. But again, the duty of the defense counsel is to bring this to the attention of the court to request that the court do a further investigation, and the court did not. In any event, just to get a specific answer to my question, this is the hearing outside the presence of the jury when the matter of Stewart is first brought to the attention of the court. And so the defense lawyer says, get rid of Stewart. So he consents to that. That's why I thought everybody agreed to that before Stewart was talked to. Well, I think they agreed that was the least of what was going to be done, and even the prosecutor had no objection to that. I mean, apparently Stewart, among all the other things he did improperly, didn't disclose that his daughter had been, or a relative had been raped, even though he denied it specifically during the voir dire process. So there are lots of problems with Mr. Stewart beyond what he investigated about the case and knew about the prior trial in Mr. Hardin's background. But after that had been discussed, a defense counsel clearly, in my view, was of the belief that more was required of the other jurors. But he doesn't say any more. He does not. He does not articulate. More forcefully request. I mean, this was it. It seems to be. If I were a trial judge, I can easily see where this can be overlooked. And you sort of expect, if counsel really wants you to do that, counsel to say, hey, Your Honor, you got rid of Stewart. Now let's deal with the problem with other jurors. I agree. I agree. And I think we're not for the commensurate duty on the part of the trial court to assure a fair trial and to investigate serious allegations of misconduct. Perhaps the defense counsel's not reiterating more forcefully would be something the court could take into consideration in formulating its. Now the judge said, I'm going to re-advise these other jurors and make sure that they understand that they're not to chatter among themselves and they're not to make up their minds until they begin to deliberate. And at that point, defense counsel didn't say, well, what did you find out from Mr. Stewart as to the conduct of the other jurors? He doesn't ask that. He doesn't do anything. He just goes along with the. Well, he's not in a position at that point, I think, to do much. At that point, all the other jurors are sitting there in the courtroom and the court belatedly and at a time when the jurors already had, presumably had information, Mr. Stewart. I don't think they were in the courtroom, were they, when the judge advised the counsel as to what he was going to do. He was going to re-advise them. Well, I see on the actual admonishment is on a separate page, 2039, when he actually admonishes them and when they're in the jury. I don't really see where the discussion took place of what the court was going to do until actually the court was just about to do it. And the court then at that point admonished them after the fact that they were not to discuss the case further. Well, there's certainly a lot of discussion in the lead-up. I mean, on page 7, even the prosecutor is saying, I'm not sure if he's talking about an alternate or he's talking about, I think he's talking about Stewart. The chances are if he told these people, he's probably shooting his trap off to other people as well. So it was certainly clear that everybody knew that Stewart may have been a loud mouth and talked to people, including people, maybe alternates who were out there. So, and then there's the resolution of what the process is going to be. I don't see any renewal of or any focusing by counsel, defense counsel, on we need to check the rest of the jurors and see if he's actually done it. I don't, with all due respect to Judge Fisher, I don't believe that should be required of defense counsel. He brought it to the court's attention. He asked that the court inquire of the other jurors the degree to which Stewart had infected them, and the court went about and did it its own way. There's many ways to make motions more forcefully than others, to renew them, to reiterate them, but I don't think we should be judging what the court's duty was on the strength or the persuasiveness or the persistence of the defense counsel. Okay, so then that boils down, since this is an EBBA case, what is on this record is the clearly established rule that the California court failed to apply? Well, the court failed to investigate serious allegations of jury misconduct, which is essentially the holding in the Remmer case. It also, in my view, violated the Maddox rule of not rebutting the presumption of prejudice. Now, I understand that the argument here that when Stewart is thrown off the jury, that somehow there's no further evidence of the prejudice and somehow, therefore, maybe the presumption of prejudice should not apply. But I don't think we should reward the trial court, number one, for holding a hearing without it being reported, in which he obviously discussed with Stewart what he was said. I mean, if Stewart had come in and said, I don't know what you're talking about. I haven't said a word to anyone. Is there any reason to believe the trial court would have excused him? Probably not. So I think the clear inference is that Stewart admitted some wrongdoing of some sort to the judge. So the judge has admissions by Stewart. I don't think that's clear at all. I thought everybody agreed they're going to get rid of Stewart and they're going to do it in a way without alerting him about the people who snitched on him. So I didn't get at all the idea that the judge was going to question him about his conduct and then make a determination. I thought the hearing was just to get rid of him. But if that were the case, there would have been no reason at all for an in-camera discussion between Stewart and the court. If the court had decided to get rid of him already, the stipulation would have been entered. That occurs all the time in jury trials. The two parties stipulate to get rid of a juror because of some odd behavior and that's the end of it. There's no need for the court to then hold a discussion with that juror off the record with only the court present. If Mr. Stewart... The court presumably must have said, Mr. Stewart, there have been allegations here. We're going to excuse you. Even if it was as terse and as close to the stipulation as you think it might have been, Justice Kuczynski. But presumably, if Stewart had said, there's not a truth to that at all. I haven't said a word to anyone. Is there any reason to believe that the court would then accept the stipulation and got rid of this man for no reason who was a totally innocent and possibly appropriate juror? There must have been something said at this in-camera hearing in which Stewart corroborated to the court his misconduct. I don't believe we should reward the court for not putting that on the record and not following up with the other jurors. We should reward the defense counsel for not asking that it be put on the record. Now, incompetence of counsel isn't an issue before us, apparently. It's not. And, again, remember in the court below, in the state court, none of this was ever raised as any kind of a waiver issue. There was never any kind of indication that there was any belief that this was not properly brought before the court. There was plenty of time for that to be raised and the state habeas to be brought. In fact, that was the state of the procedural record in the state court. This is not something that was ever argued by the state before. So I think at this point to suggest that the defense counsel was remiss when it was never argued previously and when the opportunity to bring more details before the court might have been present in the state has passed. And I don't think at this point... And I think everyone recognized that the trial court, the trial attorney, did present it to the court, did make the request. He wasn't as vigorous. He didn't renew it. He didn't reiterate. He wasn't as obnoxious as I might have been to try to make the point that the court needs to go beyond this. But that's not required. The court had the motion before it. It knew what it was going to do. It had its own procedure in mind. And it did not follow United States Supreme Court precedent in conducting an investigation. The court... The argument in the court below has always been that the fact that Stewart was gotten rid of cured the problem. And the fact that he may or may not  was speculative. Well, it wasn't speculative, number one, because the duty to investigate doesn't mean we get stopped with the initial presentation of the court. The court could have heard the tape, could have called a couple in who talked to Mr. Stewart, could have had Mr. Stewart testify at an in-camera hearing. Well, all those things could have happened and probably should have happened, but the record here has only kind of third-hand hearsay that the other jurors had that viewpoint and had been talking. I mean, there's nothing more that I can see. Well, first of all, Judge Fletcher, the couple who spoke to Stewart said the other jurors believe he's guilty, too. That raises... We don't even know that they got it from Stewart, but assuming they got it from Stewart, that makes it third-hand hearsay. No, no. Well, first of all, we're not talking about the admissibility of evidence. We're talking about the basis to begin an investigation. The court's not foreclosed... It's like telephone. The further the hearsay gets removed, the less reliable it is. But the court... It's more likely to be distorted in some way. But the court has a duty to investigate when it has a credible claim. It doesn't matter that it's... We consulted the crystal ball to listen to the jurors' advice. I mean, there's some threshold where the duty kicks in, especially when counsel doesn't press the argument. Just because, actually, first of all, the Stewart... The couple said that Stewart told them the other jurors believe he's guilty. Now, that can only have come from the Stewart hearing from the other jurors. That's the only reasonable inference. In addition, the court had the couple's ability to bring the couple in. The defense counsel requested and suggested that the couple be brought into court, and that's... And that can be found on page 3 of the same transcript. So the court had the opportunity to have the couple in and find out precisely in more detail what Stewart said. The fact that it started out as a double hearsay doesn't mean that that's the end of the discussion. The question is not how the source of the information started. The question is how credible and how serious are the allegations. If the couple truly was anonymous and couldn't be identified, that'd be one thing. But the couple could... They offered to bring the couple into court. There was no problem with that. The court had no interest in conducting this investigation. And the defense counsel, if it had been more vigorous, maybe the court would have changed its mind. Who knows? But the court has some responsibility, too. I think we understand your position much over your time. We'll hear from the government. May I please the Court? Peggy Ruffray, Deputy Attorney General for Respondent. Your Honor, it's obvious that the State Court was not required to question the 11 other jurors about whether they were impartial because it reasonably concluded that the allegation of bias was either third-hand hearsay or merely a piece of gossip. Now, to answer the Court's questions about what actually... It could have whittled it down by bringing the couple in and asking them questions about how they knew about it and so on. So it could have at least eliminated one level of hearsay. Yes, that certainly could have happened. But the question I think at this point and under the ADPA is whether that was required and whether it was constitutional error not to do that. And I think that the answer to that is clearly no. This Court in two previous ADPA cases, Sims and Tracy has held that the U.S. Supreme Court has never clearly established that there is an absolute duty to investigate every claim of juror bias. And I think the Court is right that there has to be some threshold of credible allegations made which was not met in this case. Well, in this case the record smells of a judge who wanted to get this second trial concluded. And there had been jury misconduct in the first trial and it's very hard to see how either the judge or defense counsel hadn't said well we've really got to get to the bottom of this. It's a very complicated case. Well, the Court was certainly willing from the very outset to get rid of juror Stewart. It didn't show any hesitation whatsoever. The questions that arose in the hearing that we supplied the supplemental excerpts of record was exactly how to go about that. I just don't get that. I mean that's third level history too, right? It was, but I think there were enough facts presented that everyone took it seriously. For example, Stewart said he thought that the defendant had bribed some of the witnesses, which in fact was evidence that subsequently came out. So that showed that Stewart did have some kind of knowledge of the first trial sufficient to show that he was probably biased. And then of course the allegation that his own daughter had been raped, that he didn't disclose during these 11 the entire rest of the jury where there's this broad claim, oh, everybody else thinks he's guilty too. And there's no indication that this couple had had dinner with Stewart and the rest of the jury so they hadn't had any personal contact with these jurors.   the defense attorney was questioning somebody about this other allegation. But then as the discussion went on, they went away from that and nobody ever returned to it. And as a matter of fact, the  attorney said, he agrees with the procedure, let's admonish them and that will be sufficient. So as far as the question of what exactly happened, I think that answers it, that it was an initial passing reference that then counsel let's see on excerpts page six want me to bring him in and tell him that he's excused. And later he says, the court says, now he doesn't, he, Stewart doesn't have to look at anybody and I'll just say enough information has come to the court through the court. It's clear that what happened was the court informed Stewart that he was going to be excused because information had come to the court's attention in a sort of nonspecific way and that there was no inquiry about his own allegations of misconduct or anything else. I think that's the only fair inference the court can draw from this particular record. Well, I'm not sure that's  fair inference. It seems the judge zeroed in on the least damaging approach, which is getting rid of the identified juror, Stewart, and closed his eyes and tunneled vision on whether he should go beyond and find out the source of Stewart's information or who Stewart had talked to beyond. He wanted to do minimal amount of inquiry, minimal amount of damage. So the obvious question would be to whom have you talked and we don't know what the answer is. Well, the parties agreed that that was the best approach in order to ensure that the couple's identifying information was not revealed since they appeared to be truly afraid that he would retaliate in some way. And that was even the defense attorney's request that the court be very circumspect when it was talking to Stewart about how this information had come forward. Does that answer the court's question? I'm not sure if it does. And I don't think the court was necessarily had tunnel vision about what was happening here. The parties discussed it. Again, this one passing aside was raised early on and then it never came up again. All the parties agreed that the court would admonish the jurors with which the court did. That's on excerpts of Record 11. And that that would be an appropriate procedure to do. Now, again, when you overlay that with the ADPA requirements as this court has to do, the question is, was it unreasonable for the court to say there is no duty to inquire of each juror and allow the court some discretion in what to do and there is obviously some threshold that must be met. In Dyer, the court said it had to be a colorable claim of bias. And it wasn't unreasonable for the state court in this case to say that threshold was not met here because this was simply third-hand hearsay or gossip. And to date we still have no more than that. There's no declarations from any of the jurors. There's no declaration from Stewart, from the couple. Can I just I'm trying to understand the judge's mindset because what Kane says at the bottom of page three of the record, I think we should just eliminate get rid of Mr. Stewart and number eight. I think it is get rid of Mr. Stewart and then admonish the jury that and then there's this dash and find out if he has said anything or talked to them. I assume that them refers to the jurors since he's talking about admonishing them. I think that's probably what that means. Okay. Now you say that they were concerned about being circumspect so that Stewart didn't know who the source of the information was. But what has that got to do with going to the next step? Yes, he could be circumspect about the source of his information but the question is given the information what to whom and what had Stewart said to the other jurors. That's clearly what Cain was looking for. I think that's what that sentence refers to and again that's the only time that was raised. Well how many times does it have to be raised? I mean this whole thing is unfolding quickly. This is a conversation I mean the time we've been talking would occupy three to three  and the court says I'll talk to the jury again Mr. Cain says I'd appreciate it and I'll swear in the new juror I'll go through the admonishment Mr. Cain again says I appreciate it your honor. So at that point it's clear that you know what's troublesome here is that you're saying as I read this this is an evolving discussion and the  have to think of a lot more aggressive and come back to it but the judge has some constitutional duty to manage this process and then he goes off in an in-camera ex-party discussion and we have no idea what he is doing. Well you raise a good point but the ultimate question is let's look at the particular information that was brought to the judge on this point. They all think he's guilty. That's a pretty damaging thing. I've sat on a jury a murder jury myself as a juror and it's pretty darn clear that if the jurors start chit-chatting that's what every trial judge is fearful of. It doesn't seem it takes a big red banner to say we ought to find out if the pool has been infected. It wasn't just they all think he's guilty. It's the defense attorney's recollection of the conversation he had with the couple. It's the couple's conversation. I'm not saying it's true. I'm just saying that that's the kind of red flag that every trial judge doing a jury trial seems to have front and center most of the time. But the trial court is entitled to consider the source of the information and where it's coming from and if it goes through this telephone tree. He didn't consider the source because he didn't say he didn't show any interest in talking to the source. He didn't suggest, no, I don't believe that this happened. The whole predicate is that the couple's information was true. Right? Otherwise he wouldn't have thrown Stewart off the jury. He'd already decided to throw Stewart off before he even went in and had the hearing. He didn't think it was true. He had some doubt about it. Why didn't he call in the source? Well, he could have, but again, that's not the question here. It's whether he was constitutionally required to do so by any Supreme Court case. And the answer to that is clearly no. If you look at some of the other circuit cases where the court has said the court did not have a duty to inquire, I think that those allegations reach a much higher threshold than the one in this particular case. For example, in the Tracy case, a juror came forward and said she had heard two other jurors talking in the line in the bathroom, and one said that she had bad feelings about the defendant, and the other juror said, is there any question about the verdict? And similar to this case, the judge questioned that juror but not the other two. And this is a big difference between feeling bad feelings and an outright statement that all the other jurors think he's guilty. That's sort of the end of the game if that's true. In Tracy, that was the actual juror who had spoken to the other people. In this case, it goes through three jurors. Thank you. Thank you. You're way over your time. If you'd like to take a minute for rebuttal. One thing we haven't talked about here, and I know you're aware of it, is when the court's deciding what to do, and when he has this less than totally vigorous aggressive defense where 74% of people believe that Harding was guilty. That's where previous trial was reversed with jury misconduct. That's what the court should have in its mind rather than the cost of the trial when it made its ruling. As Judge Fletcher said, this case smells. Thank you. Okay. Thank you. Case society will          Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.     Thank you. Thank you.
judges: B. Fletcher, Kozinski, Fisher